# EXHIBIT "1"



*WebCivil Supreme – Case Detail*

| | |
|---|---|
| Court: | **New York Supreme Court** |
| Index Number: | **651128/2025** |
| Case Name: | **P39 Tech LLC vs. Upsolver, Inc. et al** |
| Case Type: | **Comm-Contract** |
| Track: | **Complex** |
| RJI Filed: | **02/27/2025** |
| Date NOI Due: | **05/31/2026** |
| NOI Filed: | |
| Disposition Date: | |
| Calendar Number: | |
| Jury Status: | |
| Justice Name: | **Reed, Hon. Robert R.** |

Plaintiff/Petitioner:

**P39 Tech LLC**

Defendant/Respondent:

**Upsolver, Inc.**

**QlikTech, Inc.**

Attorney/Firm For Plaintiff:

**DUNNINGTON, BARTHOLOW & MILLER LLP** Attorney Type: **RETAINED**    Atty. Status: **Active**

**230 Park Ave FL 21**
**New York, NY 10169-2403**

**McGrath, Luke Aloysius**    Attorney Type: **RETAINED**    Atty. Status: **Active**

**230 Park Ave Fl 21**
**New York, NY 10169-2403**

**(212) 682-8811**

Attorney/Firm For Defendant:

**Upsolver, Inc.**    Attorney Type: **UNREPRESENTED**    Atty. Status: **Active**

**QlikTech, Inc.**    Attorney Type: **UNREPRESENTED**    Atty. Status: **Active**



*WebCivil Supreme – eFiled Documents Detail*

Court: **New York Supreme Court**
Index Number: **651128/2025**
Case Name: **P39 Tech LLC vs. Upsolver, Inc. et al**
Case Type: **Comm-Contract**
Track: **Complex**

**Document List** – Click on the document name to view the document

| Document # | Date Received/Filed | Document | Description | Motion # | Filing User |
|---|---|---|---|---|---|
| 1 | 02/27/2025 | SUMMONS + COMPLAINT | --none-- | | LUKE A MCGRATH |
| 2 | 02/27/2025 | AFFIDAVIT OR AFFIRMATION IN SUPPORT | Affirmation of Luke McGrath | | LUKE A MCGRATH |
| 3 | 02/27/2025 | EXHIBIT(S) | Rule 202.7 Notice | | LUKE A MCGRATH |
| 4 | 02/27/2025 | ORDER TO SHOW CAUSE - ACCOMPANYING COMMENCEMENT DOC(S) (PROPOSED) WITH TRO | Exhibit B to Affirmation of Luke McGrath | | LUKE A MCGRATH |
| 5 | 02/27/2025 | EXHIBIT(S) | Additional Rule 202.7 Notice | | LUKE A MCGRATH |
| 6 | 02/27/2025 | AFFIDAVIT OR AFFIRMATION IN SUPPORT | Affirmation of Alex White | | LUKE A MCGRATH |
| 7 | 02/27/2025 | EXHIBIT(S) | EULA | | LUKE A MCGRATH |
| 8 | 02/27/2025 | EXHIBIT(S) | Email Correspondence Between the Parties | | LUKE A MCGRATH |
| 9 | 02/27/2025 | MEMORANDUM OF LAW IN SUPPORT | --none-- | | LUKE A MCGRATH |
| 10 | 02/27/2025 | RJI -RE: ORDER TO SHOW CAUSE | --none-- | | LUKE A MCGRATH |

| 11 | 02/27/2025 | ADDENDUM - COMMERCIAL DIVISION (840C) | --none-- | LUKE A.<br>MCGRATH |
|---|---|---|---|---|



*WebCivil Supreme - Motion Detail*

Court: **New York Supreme Court**
Index Number: **651128/2025**
Case Name: **P39 Tech LLC vs. Upsolver, Inc. et al**
Case Type: **Comm-Contract**
Track: **Complex**

**Motion Information:**

| Motion Number | Date Filed | Filed By | Relief Sought | Submit Date | Answer Demanded | Status | Decision | Order Signed Date |
|---|---|---|---|---|---|---|---|---|
| 2 | 02/27/2025 | | Injunction/Restraining Order | | No | Before Justice: Reed, Hon. Robert R. | | |
| 1 | 02/27/2025 | | Injunction/Restraining Order | | No | Before Justice: Reed, Hon. Robert R. | | |

Case 1:25-cv-01858-VM    Document 1-2    Filed 03/05/25    Page 6 of 67

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

| | |
|---|---|
| P39 TECH LLC., | Index No. |
| Plaintiff, | Date Filed |
| - against - | Plaintiff designates *New York* County as the place of trial |
| UPSOLVER, INC., QLIKTECH, INC., | **SUMMONS** |
| Defendants. | The basis of the venue designated is by agreement of the parties |

TO THE ABOVE-NAMED DEFENDANTS:

   YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's within <u>20</u> days after service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York

   February 27, 2025

                                        **DUNNINGTON BARTHOLOW
                                        & MILLER LLP**

                                        By: _____
                                           Luke McGrath
                                           230 Park Avenue, 21st Floor
                                           New York, New York 10169
                                           (212) 682-8811
                                           lmcgrath@dunnington.com

                                        *Attorneys for Plaintiff*

Case 1:25-cv-01858-VM   Document 1-2   Filed 03/06/25   Page 7 of 67

To:

UPSOLVER, INC.
691 S. Milpitas Blvd, STE 212
Milpitas, CA, United States, 95035

QLIKTECH, INC.
c/o corporation services company
80 State Street
Albany, New York 12207

Case 1:25-cv-01859-VM   Document 1-2   Filed 03/05/25   Page 8 of 67

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

| | |
|---|---|
| P39 TECH LLC, | Index No. _____ |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| UPSOLVER, INC., QLIKTECH, INC., | **JURY DEMANDED** |
| Defendants. | |

Plaintiff P39 TECH LLC ("Peer39") for its Complaint against Defendants UPSOLVER, INC. ("Upsolver"), and QLIKTECH, INC. ("QlikTech") ("Defendants"), alleges as follows:

### PRELIMINARY STATEMENT

This is a proceeding to request relief for breach of contract and an entry of judgement against Defendants Upsolver, Inc. ("Upsolver") and Qliktech, Inc. ("Qliktech" and, together, "Defendants"), pursuant to CPLR 6301.

This is a case about a vendor who is threatening to destroy its customer's business with the flick of a switch – the Court should not allow that to happen. Plaintiff Peer39 engaged with Upsolver to access Upsolver's platform to conduct Peer39's business. After years of working together, Upsolver emailed and complained that Peer39 had an outstanding amount due. This was because Upsolver failed to invoice and properly account for Peer39's usage. Also, Upsolver had failed to fix serious bugs in the system that were impacting performance, in violation of the parties' contract. Instead of working out a resolution, Upsolver unilaterally decided to "flick the switch" and shut down Peer39's access – which is about to happen on Friday, February 28, 2025.

Case 1:25-cv-01859-VM    Document 1-3    Filed 03/05/25    Page 9 of 67

The Court should award damages for breach of contract and enter judgement against Defendants.

## PARTIES

1.      Peer39 is a limited liability company registered to do business in New York. Alex White is the COO of Peer39 and Arnon Brouner is a representative of Peer39.

2.      Upsolver is a foreign business corporation registered to do business in New York.  According to Upsolver, Joel Horovitz is the Director of Global Sales of Upsolver and Ori Rafael is a representative of Upsolver.

3.      Qliktech is a foreign business corporation registered to do business in New York.

## JURISDICTION AND VENUE

4.      The End User License Agreement ("EULA") that Upsolver and Peer39 entered states, "Any dispute, controversy or claim which may arise out of or in connection with this Agreement or our services hereunder, shall be submitted to the sole and exclusive jurisdiction of the competent New York State Courts located in New York County and the U.S. District Court for the Southern District of New York."

5.      Accordingly, the parties have consented to this Court's jurisdiction and venue is proper pursuant to CPLR § 501.

## FACTUAL ALLEGATIONS

6.      Peer 39 is a limited liability company registered to do business in New York.

7.      Alex White is the COO of Peer39.

8.      Arnon Brouner is a representative of Peer39.

9.      Upsolver is a foreign business corporation registered to do business in New York.

10.  According to Upsolver, Joel Horovitz is the Director of Global Sales of Upsolver and Ori Rafael is a representative of Upsolver.

11.  Peer39 and Upsolver entered into an agreement for Upsolver to provide services to Peer39 in and around February 2020 (the "EULA"). *See* White Aff., Ex A.

12.  The relationship began and the first payment was billed and paid in April 2020. Implementation was complete in May 2020 and the parties moved forward under the EULA up to the present.

13.  Under this agreement Upsolver provided Peer39 with access to Upsolver's "Data Lake" platform in order for Peer39 to conduct its business.

14.  Peer39's business is categorizing websites according to the content of their articles. Customers pay per website categorized in order that the customers can place their advertisements next to relevant content and avoid association with undesirable or unsafe content.

15.  Peer39 utilizes Upsolver's platform to store data and generate analytics.

16.  Peer39 uses Upsolver services on a month-to-month basis. This is called the "on demand price" in the EULA.

17.  Under the EULA, Upsolver should have sent invoices to Peer39 at the end of each calendar month according to actual consumption.

18.  For over four years, Peer39 has been a customer of Upsolver, abiding by the commitment agreement terms per the EULA.

19.  On or around January 16, 2025, Horovitz sent an email to Brouner alleging, incorrectly, that Peer39 had an outstanding $249,905 amount due to Upsolver for 2024. *See* White Aff., Ex. B.

20.     Leading up to this email, Upsolver did not send any invoices for the period of February 2024 to December 2024.

21.     Further, previous to this email, Upsolver had not invoiced or notified Peer39 of any alleged amounts due. In fact, notwithstanding the requirement under the EULA, Upsolver had not, at the end of each calendar month, notified Peer39 of any usage or amounts due according to actual consumption.

22.     Peer39's business model relies on categorizing websites based on the content of their articles, a service for which clients pay per website categorized. Peer39's ability to provide this service is contingent upon access to Upsolver, which constitutes critical infrastructure. If Upsolver shuts off access, Peer39's system will cease functioning, preventing the categorization of websites and rendering Peer39 unable to fulfill its obligations to clients. This disruption threatens not only Peer39's operational capacity but also its credibility in the marketplace, as it will be seen as unable to deliver on its commitments.

23.     Without the availability of Peer39's categorization service, through dependence on Upsolver's infrastructure, Peer39's customer's brands will be linked with inappropriate content, such as pornography or illegal materials. If a major brand's advertising is linked to such content, the reputational harm to both Peer39 and the advertiser is immeasurable, leading to further long-term and expanding losses.

24.     This is required by the parties' EULA, as follows:

*"On-Demand Price" - no commitment, pay-as-you go model. Upsolver will bill Customer in the end of a calendar month according to its actual consumption.*

White Aff., Ex. A at Section 1.13.

25.     The first time Peer39 received any notification from Upsolver was around January 16, 2025.

26. At that time, Upsolver did not provide any corroboration or authentication of the amount it claimed was due and did not provide any underlying calculation.

27. Peer39 immediately objected to the email and the claimed amount due, sparking a flurry of telephone calls and emails.

28. Then, on February 18, 2025, Peer39 further notified Upsolver that their calculation was wrong and Upsolver's system had known defects that caused consumption to be incorrect. See Exhibit B. Peer39 asked Upsolver to fix the proposed usage based on the known errors that Upsolver was currently then attempting to rectify. Upsolver's unilateral accounting fails to reflect major issues with the service that impacted cost, resource allocation and stability.

29. Peer39 further objected that Upsolver's claimed amount was inflated and not an accurate reflection of Peer39's usage.

30. On or about February 25, 2025, representative of Upsolver Ori Rafael informed Peer39 that Upsolver would terminate Peer39's access to Upsolver services within three days if Peer39 did not waive its objections and make payment according to Upsolver's inaccurate demand. Specifically, Upsolver threatened to shut off Peer39 in three days absent surrender. The three-day period ends on February 28, 2025. Upsolver refused to discuss alternatives or dispute resolution and instead issued the three-day ultimatum.

31. The EULA provides only a termination for a material breach.

32. Instead of resolving these customer issues, on or about February 25, 2025, Ori Rafael threatened Peer39 over the phone that Upsolver would terminate Peer39's access to Upsolver services if Peer39 did not waive its objections and make payment according to Upsolver's inaccurate demand.

Case 1:25-cv-01859-VM    Document 1-2    Filed 03/05/25    Page 13 of 67.    651128/2025

33.    Specifically, Upsolver threatened to shut off Peer39 in three days absent immediate payment – ignoring the issues Peer39 raised. The three-day period ends on February 28, 2025.

34.    Upsolver refused to discuss alternatives or dispute resolution and instead issued the three-day ultimatum.

35.    At the time of the filing of this Complaint, Upsolver – after receiving notice of this filing – has not contacted Peer39 to withdraw the threat of turning off Peer39's access to its services on February 28, 2025.

36.    As discussed more thoroughly in the Affidavit of Alex White, without the availability of Peer39's categorization service, through dependence on Upsolver's infrastructure, Peer39's customer's brands will be linked with inappropriate content, such as pornography or illegal materials.

37.    Upsolver was acquired by Qliktech on January 15, 2025.

38.    Qliktech is in the process of winding down Upsolver, and Upsolver's funds are limited.

39.    The threatened shutdown will cut Peer39 off from its own digital assets which are so intertwined with Upsolver's pipeline, as a longstanding customer of Upsolver, that Upsolver would in essence be taking Peer39's property.

## AS AND FOR THE FIRST CAUSE OF ACTION
## BREACH OF CONTRACT CLAIM

40.    Peer39 repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

41.    Peer39 and Upsolver entered into a valid and enforceable EULA agreement in or around February 2020.

42.    Peer39 performed its obligations under the contract and paid for services in a timely manner when invoiced.

43.     The EULA provides that: " 'On-Demand Price' – no commitment, pay-as-you go model. Upsolver will bill Customer in the end of a calendar month according to its actual consumption." *See* White Aff., Ex. A, at Section 1.13.

44.     Starting in 2024, Upsolver failed to invoice Peer39 properly at the end of each calendar month.

45.     This failure materially altered the relationship between the parties and created the current complained of situation – a situation in which Peer39 may be shut out of the Upsolver platform through no fault of its own.

46.     The EULA also states, in section 6, that the agreement will remain in effect unless and until a material breach and termination. See Ex. A, at Section 6.

47.     There has been no material breach by Peer39 and Upsolver has not terminated the EULA under that contract's terms.

48.     Yet, Upsolver is turning off access by Friday, February 28, 2025.

49.     The EULA further provides that: "During the Term, [Upsolver] will endeavor to provide [Peer39] with fixes for Platform malfunctions that [Peer39] or other customers, have found or reported, considering, among others, [Upsolver's] ability to reproduce the malfunction in question, the severity of the malfunction, and the magnitude of its effect." *See* White Aff., Ex. A, at Section 7.2.

50.     Upsolver failed to fix platform malfunctions, including but not limited to, data-retention bugs and repeated data accumulation bugs throughout 2023 and 2024.

51.     As a result, Peer39 has suffered damages including, but not limited to, loss of the services that Upsolver was to provide but failed to provide, Peer39's loss of goodwill and damage to reputation, and damages resulting from Peer39's unsatisfied customers.

52. In addition, Peer39 has suffered monetary losses in an amount to be proven at trial but no less than $100,000.00.

53. In addition to the above, Upsolver manifested its intent to repudiate the EULA on February 28, 2025, when Ori Rafael, a representative of Upsolver, stated in substance that Upsolver would shut down Peer39's access.

54. The threatened shutdown can only be considered an absolute repudiation of the EULA because after said shutdown, Upsolver would be providing no further services to Peer39 and would have completely disrupted Peer39's business and the ability for Peer39 to operate.

55. The threatened shut down is in direct violation of the terms of the EULA and there is no allowance for such action under the EULA.

56. There is likewise no excuse for the threatened shutdown, as it is not a remedy afforded Upsolver under the EULA and is not the method under which Upsolver may terminate the EULA.

57. As discussed herein, Peer39 will be substantially damaged in the event of shutdown in an irreparable manner, but also in an amount to be determined at trial but no less than $500,000.00, which is just a fraction of the revenue Peer39 generates in operating its business.

## JURY DEMAND

58. Plaintiff hereby demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, by reason of the foregoing, Plaintiff prays that the Court enter Judgment against the Defendants as follows:

(a) For a Restraint per the Order to Show Cause with TRO (McGrath Aff., Ex. B);

(b) On the First Cause of Action for Breach of Contract Claim, for damages in an amount to be proven at trial, but no less than $500,000;

(c) For money damages; punitive damages; reasonable attorneys' fees, costs and other disbursements incurred in connection with this action; pre-judgment and post-judgment interest; statutory damages and equitable relief; costs of this action to the fullest extent of the law; and

(d) For such other relief as the Court deems just and proper.

Dated: February 27, 2025

DUNNINGTON, BARTHOLOW & MILLER LLP

By: _____

Luke McGrath
230 Park Avenue, 21st Floor
10169 New York, NY
Telephone: +1.212-682 8811
lmcgrath@dunnington.com

*Attorneys for Plaintiff*

Case 1:25-cv-01858-VM    Document 1-3    Filed 03/05/25    Page 17 of 67

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

P39 TECH LLC,

                    Plaintiff,

        -against-

UPSOLVER, INC., QLIKTECH, INC.,

                    Defendants.

Index No. _____

**AFFIRMATION OF LUKE MCGRATH**

Luke McGrath, an attorney duly admitted to practice law in the state of New York and appearing on behalf of Plaintiff P39 Tech LLC ("Plaintiff" or "Peer39") hereby affirms under penalties of perjury that pursuant to CPLR 2106:

1.     I am the attorney for Plaintiff and submit this affirmation in support of their Order to Show Cause seeking an order to enjoin Defendants Upsolver, Inc. ("Upsolver") and QlikTech, Inc. ("QlikTech" and together, the "Defendants") from taking any action adverse to Peer39 regarding Peer39's access to Upsolver services. QlikTech Inc has recently acquired Upsolver.

2.     Plaintiff has provided notice to Defendants' representative, Joel Horovitz, on February 26, 2025, via email, pursuant to NYCRR 202.7(f). Attached hereto as **Exhibit A** is a true and correct copy of Plaintiff's correspondence to Defendants.

3.     At the time of the filing of this application, Upsolver – after receiving notice of this filing – has not contacted Peer39 to withdraw the threat of turning off Peer39's access to its services on February 28, 2025.

4.     Plaintiff brings this proceeding seeking to enjoin Defendants from suspending the data access service provided by Upsolver on February 28, 2025.

5.      Attached to this Affirmation as **Exhibit B** is a true and correct copy of the Order to Show Cause dated February 27, 2025, enjoining and restraining Upsolver from terminating, suspending or otherwise modifying P39 Tech LLC's ("Peer39") access to Upsolver's services.

6.      Before this filing, my office caused copies of all papers contained in this filing to be emailed to Joel Horovitz in the same email chain of our prior NOTICE advising him that we would be filing these papers today, allowing him sufficient time to respond to this application.   Attached to this Affirmation as **Exhibit C** is a true and correct copy of this email correspondence

7.      No previous application for the same or similar relief has been made by me in this case.


Dated: New York, New York
       February 27, 2025


                                        DUNNINGTON, BARTHOLOW & MILLER
                                        LLP
                                        Attorneys for Plaintiff


                                        By:_____
                                        Luke McGrath, Esq.
                                        230 Park Avenue, 21st Floor
                                        New York 10169
                                        Telephone: +1.212-682 8811
                                        LMcgrath@Dunnington.com

Case 1:25-cv-01859-VM   Document 1-2   Filed 03/05/25   Page 19 of 67.   651128/2025

RECEIVED NYSCEF: 02/27/2025

## WORD COUNT CERTIFICATION

I, Luke McGrath, an attorney duly admitted to practice law before the Courts of the State of New York, hereby certify that this Affirmation complies with the word count limit set forth in 22 NYCRR § 202.8-b, because it contains 314 words, excluding the caption and signature block. In preparing this certification, I have relied on the word count of Microsoft Word, the word processing system used to prepare this affirmation.

Dated: New York, New York
      February 27, 2025                       _____/s/ Luke McGrath_____
                                           Luke McGrath

# EXHIBIT A

Case 1:25-cv-01858-VM   Document 1-3   Filed 03/05/25   Page 21 of 67   651128/2025

| | |
|---|---|
| **From:** | Luke McGrath |
| **To:** | Joel.Horovitz@qlik.com |
| **Cc:** | Matilda Trapasso; Luke McGrath |
| **Subject:** | NOTICE OF FILING TO RESTRAIN FROM ADVERSE ACTION |
| **Date:** | Wednesday, February 26, 2025 5:09:24 PM |

Mr. Horovitz:

This firm, Dunnington, Bartholow & Miller, represents Pier39 as litigation counsel.  Please forward to a lawyer in your discretion as we have no contact for any legal department.

Pursuant to Uniform Rule 202.7 (f), be advised that you are now ON NOTICE that we will be filing at 10am on Thursday, February 27, 2025 in New York County Supreme Court an Order to Show Cause for a Temporary Restraining Order barring you from taking adverse action you have threatened against our client.

This email shall constitute a good faith effort to notify you of the time, date and place that the application will be made – more than sufficient to permit you an opportunity to appear in response to the application.

After we submit the OSC, we shall inform you of the place, date and time when the Justice will entertain the application.

We will proceed by filing a Temporary Restraining Order in New York County Supreme Court to restrain Upsolver Inc., QlikTech Inc and the agents of these entities from taking any action adverse to Peer39 in regards to Peer39's access to Upsolver services.

If we are in error and Upsolver is withdrawing its threatened action to terminate Peer39's access to Upsolver services, please advise us immediately, but in any event no later than 10 am tomorrow, Thursday morning.

Thank you.

Get Outlook for iOS

Case 1:25-cv-01858-VM   Document 1-2   Filed 03/05/25   Page 22 of 67

At IAS Part ___ of the Supreme Court of the State
of New York, held in and for the County of New
York at the Courthouse, Room___, 60 Centre
Street, New York, New York, on _____,
2025

Hon:_____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

P39 TECH LLC,

                Plaintiff,

        -against-

UPSOLVER, INC., QLIKTECH, INC.,

                Defendants.

Index No. _____

**ORDER TO SHOW CAUSE WITH
TEMPORARY RESTRAINING ORDER**

Upon reading and filing the Affidavit of Alex White, dated February 27, 2025, together
with the exhibits attached thereto, the Affirmation of Luke McGrath, Esq., dated February 27, 2025,
together with the exhibits attached thereto, the accompanying memorandum of law seeking an
order to show cause for a temporary restraining order, dated February 27, 2025, and the Complaint
dated February 27, 2025;

**ORDERED** that the Defendants or their attorney shall show cause before this Court, in

Room _____, _____, on _____, 2025,

at _____a.m./p.m. or as soon thereafter as counsel may be heard, why an order should not

be made enjoining and restraining Upsolver, Inc. ("Upsolver") from terminating, suspending or

otherwise modifying P39 Tech LLC's ("Peer39") access to Upsolver's services during the

pendency of the dispute as to prior billing under the parties' services agreement for the periods up

to January 2025 and why Peer39 should not have such other and further relief as may be just,

proper and equitable.

- 1 -

**IT IS FURTHER ORDERED** that, pursuant to CPLR § 6313, pending the hearing and determination of this motion that:

1. Upsolver is hereby enjoined and retrained from terminating, suspending or otherwise modifying Peer39's access to Upsolver's services;

2. Upsolver is further enjoined and restrained from taking any other action seeking to collect the amount claimed in the dispute as to prior billing for the periods up to January 2025; and

3. Upsolver is further enjoined and restrained from taking any negative actions in regard to Peer39's account and the services provided Peer39 on a going forward basis such that the status quo is maintained regarding the services Upsolver provides Peer39.

**IT IS FURTHER ORDERED** that service of a copy of this order, and the other papers upon which this order is granted, upon the Defendants by email and NYSCEF filing on or before the _____ day of _____, 2025, shall be deemed good and sufficient service thereof.

**IT IS FURTHER ORDERED** that answering papers, if any, shall be served upon counsel for Plaintiff by email and NYSCEF filing on or before the _____ day of _____, 2025.

**IT IS FURTHER ORDERED** that reply papers, if any, shall be served upon counsel for Defendants by email and NYSCEF filing on or before the _____ day of _____, 2025.

ENTER:

_____

J.S.C.

# Exhibit C

Case 1:25-cv-01859-VM    Document 1-2    Filed 03/05/25    Page 25 of 67.  651128/2025
RECEIVED NYSCEF: 02/27/2025

| | |
|---|---|
| **From:** | Matilda Trapasso |
| **To:** | Luke McGrath; Joel.Horovitz@qlik.com |
| **Subject:** | RE: NOTICE OF FILING TO RESTRAIN FROM ADVERSE ACTION |
| **Date:** | Thursday, February 27, 2025 6:31:01 PM |
| **Attachments:** | Summons and Complaint Signed.pdf |
| | Luke McGrath Affirmation 02-27-25 Final.pdf |
| | Ex B OSC TRO Final.pdf |
| | Alex White Affidavit 02-27-25 Final Signed.pdf |
| | Ex. A FULA.pdf |
| | Ex. B.pdf |
| | Memo of law 02-27-25 Final.pdf |

Mr. Horovitz:

Pursuant to our previous email, please see attached for copies of the papers we will be promptly e-filing in New York State Supreme Court.

Regards,

Matilda Trapasso
Paralegal
**DUNNINGTON BARTHOLOW & MILLER LLP**

230 Park Avenue, 21st Floor
New York, New York 10169
Telephone: +1.212-682-8811
Email: MTrapasso@dunnington.com

Member – Cicero League of International Lawyers
This communication is confidential and subject to this disclaimer.
Follow us on LinkedIn and Twitter

**From:** Luke McGrath <Lmcgrath@dunnington.com>
**Sent:** Wednesday, February 26, 2025 5:09 PM
**To:** Joel.Horovitz@qlik.com
**Cc:** Matilda Trapasso <mtrapasso@Dunnington.com>; Luke McGrath <Lmcgrath@dunnington.com>
**Subject:** NOTICE OF FILING TO RESTRAIN FROM ADVERSE ACTION

Mr. Horovitz:

This firm, Dunnington, Bartholow & Miller, represents Pier39 as litigation counsel.  Please forward to a lawyer in your discretion as we have no contact for any legal department.

Pursuant to Uniform Rule 202.7 (f), be advised that you are now ON NOTICE that we will be filing at 10am on Thursday, February 27, 2025 in New York County Supreme Court an Order to Show Cause for a Temporary Restraining Order barring you from taking adverse action you have threatened against our client.

This email shall constitute a good faith effort to notify you of the time, date and place that the application will be made – more than sufficient to permit you an opportunity to appear in response to the application.

Case 1:25-cv-01859-VM   Document 1-2   Filed 03/05/25   Page 26 of 67   INDEX NO. 651128/2025

RECEIVED NYSCEF: 02/27/2025

After we submit the OSC, we shall inform you of the place, date and time when the Justice will entertain the application.

We will proceed by filing a Temporary Restraining Order in New York County Supreme Court to restrain Upsolver Inc., QlikTech Inc and the agents of these entities from taking any action adverse to Peer39 in regards to Peer39's access to Upsolver services.

If we are in error and Upsolver is withdrawing its threatened action to terminate Peer39's access to Upsolver services, please advise us immediately, but in any event no later than 10 am tomorrow, Thursday morning.

Thank you.

Get Outlook for iOS

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

P39 TECH LLC,

                                    Plaintiff,

          -against-

UPSOLVER, INC., QLIKTECH, INC.,

                                    Defendants.

Index No. _____

**AFFIDAVIT OF ALEX WHITE**

I, Alex White, COO of P39 Tech LLC ("Peer39"), declare based upon my personal knowledge, except as to statements expressly made upon information and belief, as follows pursuant to CPLR 2106:

1.      I submit this affidavit in support of Peer39's Order to Show Cause why this Court should enter an Order restraining Upsolver, Inc. ("Upsolver") and QlikTech, Inc. ("Qlik," together "Defendants") and the agents of these entities from taking any action adverse to Peer39 regarding Peer39's access to Upsolver services. QlikTech Inc has recently acquired Upsolver.

2.      Peer39 is a limited liability company registered to do business in New York and founded in 2006.  I, Alex White, am the COO of Peer39 and Arnon Brouner is a representative of Peer39.

3.      Upsolver is a foreign business corporation registered to do business in New York.  According to Upsolver, Joel Horovitz is the Director of Global Sales of Upsolver and Ori Rafael is a representative of Upsolver.

4.    Peer39 and Upsolver entered into an agreement for Upsolver to provide services to Peer39 in and around February 2020 (the "EULA"). Attached hereto as **Exhibit A** is a true and correct copy of the EULA.

5.    The relationship began and the first payment was billed and paid in April 2020. Implementation was complete in May 2020 and the parties moved forward under the EULA up to the present.

6.    Under this agreement, Upsolver provided Peer39 with access to Upsolver's "Data Lake" platform in order that Peer39 could conduct its business.

7.    Peer39's business is categorizing websites according to the content of their articles. Customers pay per website categorized in order that the customers can place their advertisements next to relevant content and avoid association with undesirable or unsafe content.

8.    Peer39 utilizes the Upsolver platform in order to store data and generate analytics.

9.    Peer39 uses Upsolver services on a month-to-month basis. This is called the "on demand price" in the EULA.

10.    Under the EULA, Upsolver should have sent invoices to Peer39 at the end of each calendar month according to actual consumption.

11.    For more than four years, Peer39 has been a customer of Upsolver, abiding by the commitment agreement terms per the EULA.

12.    On or around January 16, 2025, Horovitz sent an email to Brouner alleging, incorrectly, that Peer39 had an outstanding $249,905 amount due to Upsolver for 2024. Attached hereto as **Exhibit B** is a true and correct copy of the email correspondence between the parties.

13.    Leading up to this email, Upsolver did not send any invoices for the period of February 2024 to December 2024.

Case 1:25-cv-01858-VM    Document 1-2    Filed 03/05/25    Page 29 of 67    INDEX NO. 651128/2025
RECEIVED NYSCEF: 02/27/2025

14.     Further, previous to this email, Upsolver had not invoiced or notified Peer39 of any alleged amounts due.  In fact, notwithstanding the requirement under the EULA, Upsolver had not, at the end of each calendar month, notified Peer39 of any usage or amounts due according to actual consumption.

15.     This is required by the parties' EULA, as follows:

*"On-Demand Price" - no commitment, pay-as-you go model. Upsolver will bill Customer in the end of a calendar month according to its actual consumption.*

Ex. 1 at Section 1.13.

16.     The first time Peer39 received any notification from Upsolver was around January 16, 2025.

17.     At that time, Upsolver did not provide any corroboration or authentication of the amount it claimed was due and did not provide any underlying calculation.

18.     Peer39 immediately objected to the email and the claimed amount due, sparking a flurry of telephone calls and emails.

19.     Then, on February 18, 2025, Peer39 further notified Upsolver that their calculation was wrong and Upsolver's system had known defects that caused consumption to be incorrect. *See* Exhibit 2. Peer39 asked Upsolver to fix the proposed usage based on the known errors that Upsolver was currently then attempting to rectify.  Upsolver's unilateral accounting fails to reflect major issues with the service that impacted cost, resource allocation and stability.

20.     On or about February 25, 2025, representative of Upsolver Ori Rafael informed Peer39 that Upsolver would terminate Peer39's access to Upsolver services within three days if Peer39 did not waive its objections and make payment according to Upsolver's inaccurate demand. Specifically, Upsolver threatened to shut off Peer39 in three days absent surrender. The three-day

NYSCEF DOC. NO. 6

period ends on February 28, 2025. Upsolver refused to discuss alternatives or dispute resolution and instead issued the three-day ultimatum.

21.    The EULA provides only a termination for a material breach.

22.    Peer39's business model relies on categorizing websites based on the content of their articles, a service for which clients pay per website categorized. Peer39's ability to provide this service is contingent upon access to Upsolver, which constitutes critical infrastructure. If Upsolver shuts off access, Peer39's system will cease functioning, preventing the categorization of websites and rendering Peer39 unable to fulfill its obligations to clients. This disruption threatens not only Peer39's operational capacity but also its credibility in the marketplace, as it will be seen as unable to deliver on its commitments.

23.    Without the availability of Peer39's categorization service, through dependence on Upsolver's infrastructure, Peer39's customer's brands will be linked with inappropriate content, such as pornography or illegal materials. If a major brand's advertising is linked to such content, the reputational harm to both Peer39 and the advertiser is immeasurable, leading to further long-term and expanding losses.

24.    The interruption of Peer39's ability to categorize websites will result in the immediate loss of clients and the company's inability to meet contractual obligations. Peer39 will lose clients and be unable to function as a business since it will have no product to satisfy its contracts. This failure will erode Peer39's reputation in the marketplace, as customers will perceive the company as unreliable. The loss of clients will compound this damage, leading to a substantial decrease in goodwill, a critical asset that is impossible to recover through ordinary remedies. Peer39's long-standing relationships with clients will be severely damaged, leading to cascading reputational harm.

Case 1:25-cv-01858-VM   Document 1-3   Filed 03/05/25   Page 31 of 67

25.     Allowing Upsolver to terminate Peer39's access to its services changes the status quo and is a draconian result considering Upsolver did not invoice Peer39 for a year and now their demand for payment is nothing more than a billing dispute.

26.     The financial losses from the inability to provide services are unquantifiable, as money damages cannot capture the loss of credibility, goodwill, and reputational damage to both Peer39 and its customers. The disruption will render Peer39's product useless, devaluing the business and undermining client trust. Additionally, clients rely on Peer39's categorizations to avoid associating their brands with inappropriate content, such as pornography or illegal materials. If a major brand's advertising is linked to such content, the reputational harm to both Peer39 and the advertiser is immeasurable, leading to further long-term and expanding losses.

27.     Money damages cannot possibly make Peer39 whole should Upsolver shut out access because its product will cease to function and its business will no longer have value to any of its customers. Further, Upsolver was acquired by Qlik on January 15, 2025, and Qlik is in the process of winding down Upsolver. Even if Plaintiff got a money judgment against Upsolver, it would have no value. As such, Peer39 does not have a potential for a real monetary remedy.

28.     Additionally, this harm cannot be quantified due to the loss of existing customers but also losses beyond reputational damages because those customers in turn will be damaged in their own business in an ever-expanding impact.

29.     At the time of the filing of this application, Upsolver – after receiving notice of this filing – has not contacted Peer39 to withdraw the threat of turning off Peer39's access to its services on February 28, 2025.

30.     As Plaintiff, Peer39 seeks an injunction to stop Defendants from terminating Peer39's access.

31.    The threatened shutdown will cut Peer39 off from its own digital assets which are so intertwined with Upsolver's pipeline, as a longstanding customer of Upsolver, that Upsolver would in essence be taking Peer39's property.

32.    No prior application has been made for the relief sought herein.

33.    I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 27, 2025

_____

Alex White

## WORD COUNT CERTIFICATION

I, Luke McGrath, an attorney duly admitted to practice law before the Courts of the State of New York, hereby certify that this Affirmation complies with the word count limit set forth in 22 NYCRR § 202.8-b, because it contains 1,344 words, excluding the caption and signature block. In preparing this certification, I have relied on the word count of Microsoft Word, the word processing system used to prepare this affirmation.

Dated: New York, New York
     February 27, 2025

                                           ____/s/ Luke McGrath____
                                               Luke McGrath

Exhibit A



# Upsolver 2 Year Commitment Proposal for Peer39

**Upsolver Pricing structure**
Upsolver Unit: A unit of processing capability per hour

| Upsolver Unit Price (Hourly) | | |
|---|---|---|
| Item | Discount | $Price/Hour |
| Upsolver Unit - on-demand | - | $5.48 |
| Upsolver Unit - Annual Billing | 25% | $4.11 |

| Incremental Volume Discount | | |
|---|---|---|
| # of Units | Discount | $Price/Hour |
| 20-30 | | $0.58 |
| 31-100 | 30% | $0.41 |
| 100+ | 30% | $0.29 |

| Total Cost of Ownership for: | 40 | First Year | Second year | Third year | Total for 3 years | Comments |
|---|---|---|---|---|---|---|
| Line Item | Avg Price | Total | Total | Total | | |
| Upsolver Unit* License | $0.54 | $189,216 | $189,216 | $189,216 | | |
| AWS** | $0.12 | $42,048 | $42,048 | $42,048 | | |
| Discount | | -$70,000 | -$30,000 | -$20,000 | | |
| Premium Support | | $0 | $0 | $0 | | |
| Total | | $161,264 | $201,264 | $211,264 | | |
| AWS Credits *** | | -$50,000 | -$50,000 | -$50,000 | -$150,000 | |
| Effective cost per Year | | $111,264 | $151,264 | $161,264 | $423,792 | =Total-AWS Credits |
| Upsolver total invoice price (before AWS credits) | | $119,216 | $159,216 | $169,216 | $447,648 | =License-Discount |
| AWS expected cost | | $42,048 | $42,048 | $42,048 | $126,144 | =Infrastructure |

   * 1 Upsolver Unit = 1 hour running Upsolver's software on an instance with 8 CPUs
   ** AWS price is based on r5 spot servers
   *** $50,000 AWS Credits will be provided once a year
   **** Upsolver will start working on delivering the project **upon signing the contract** with the goal of delivering the project till May 1st
   *****The above pricing and the payment plan are for a two years commitment.

## Terms of Service

THIS AGREEMENT GOVERNS THE USE OF THE PLATFORM BY YOU, YOUR EMPLOYEES OR ANY OTHER INDIVIDUAL DESIGNATED BY YOU TO USE THE PLATFORM ON YOUR BEHALF. BY SIGNING THIS AGREEMENT OR ACCEPTING THIS AGREEMENT (OR ANY APPLICABLE ORDER FORM) OR USING THE PLATFORM YOU SIGNIFY YOUR CONSENT TO BE BOUND BY THE AGREEMENT AND THAT YOU ARE OF LEGAL AGE TO FORM A BINDING CONTRACT. IF YOU DO NOT AGREE TO THE AGREEMENT YOU MUST NOT USE THE PLATFORM. ONCE ACCEPTED, THE AGREEMENT SHALL CONSTITUTE A BINDING CONTRACT BETWEEN UPSOLVER AND YOU. EACH OF UPSOLVER AND YOU MAY BE REFERRED HEREIN AS A "PARTY" AND COLLECTIVELY AS THE "PARTIES".

THE AGREEMENT

## 1.    Definitions

1.1.    *"Upsolver"* (also referred to as "we", "us", or "our") – means the Upsolver entity which executed or accepted the order form (or any other purchase order which for all purposes shall also be considered as an order form), or if no order form was executed, Upsolver Inc.

1.2.    "*Customer*" (also referred to as "you", or "yourself") – means legal entity or individual accepting the Agreement.

1.3.    *"Agreement"* – means these terms of services, as well as any order forms which have been executed between the Parties or was accepted by Upsolver.

1.4.    *"Platform"* – means Upsolver's Data Lake Platform.

φ upsolver

1.5. *"Term"* – as set forth under section 6.

1.6. *"Authorized Users"* – means employees or service providers who are authorized by the Customer to access and use the Platform on your behalf.

1.7. *"Customer Data"* – means content or partial content of files fed through Upsolver's Platform by the Customer and any additional data created by the Platform (enrichments, aggregations etc.) based on such content.

1.8. *"Provisioning Data"* – means any data generated by Upsolver's platform as long as it doesn't include Customer Data (for instance, error logs, usage statistics, billing information, objects created in Upsolver's platform etc.).

1.9. *"Deployment"* – means the deployment of Upsolver's Platform on servers according to the Customer's preference. Servers can reside in Upsolver's cloud account, Customer's cloud account or Customer's data center.

1.10. *"Upsolver Unit"* – means a unit of processing capability per hour, billed on per-minute usage. Upsolver fees will be calculated according to consumption of Upsolver Units. Upsolver supports several instance types so one instance hour may cost more than one Upsolver Unit.

1.11. *"Upsolver Unit Price"* – Unit price will vary according to the term and size of purchase from Upsolver.

1.12. *"Fees"* – means the applicable fees due for use of the Platform which shall be calculated according to the consumption of Upsolver Units, in accordance with the applicable Payment Method.

1.13. *"Payment Method"* – means either one or a combination of the following:

- *"On-Demand Price"* - no commitment, pay-as-you go model. Upsolver will bill Customer in the end of a calendar month according to its actual consumption;
- *"Reserved price"* - in exchange for a discount, Customer commits to buying a pool of Upsolver Units, valid for a specific term (for example - 20,000 Units, valid for a period of 12 months). During the agreed upon consumption term, every Upsolver Unit consumed by Customer will be deducted from the pool. Customer can't cancel the pool order or get a refund for Upsolver Units already purchased. Upsolver Units may not be used after the order form's term has ended.

## 2. General

2.1. Each of the Parties hereby warrants and represents to the other Party that: (i) it has full power and authority to enter into and perform its obligations under this Agreement; (ii) the execution, delivery and performance of this Agreement was duly authorized; and (iii) If it is a corporation, it's in good standing under the laws of the place of its incorporation.

2.2. Subject to your compliance with the terms of this Agreement including payment of the Fees (to the extent applicable), we grant you a limited, non-exclusive, revocable, non-transferable, and non-sub licensable right, to use the Platform during the term of the Agreement. The use of the Platform shall be (i) strictly by your Authorized Users; (ii) solely for your personal use or your internal business purposes; and (iii) in accordance with the other requirements of this Agreement and the Platform's documentation available on Upsolver's website (as may be updated from time to time) and with Upsolver's instructions.

2.3. Notwithstanding the above, if you use the Platform for trial purposes, you are entitled to use the Platform for evaluation purposes and during a limited period only, unless you become a paying Customer). We reserve the right to modify, limit the functionalities and/or discontinue the provision of the trial version at any given time, without providing a prior notice to that effect. Please note that upon the end of your trial period, and unless you became a paying Customer, prior to such time, you may lose access to Upsolver's Platform. As you do not make any payments for using the trial versions, we shall not have any liability for the use of the Platform or provide any warranty regarding the Platform. Your sole remedy for any claim related to such use, will be to cease use of the Platform.

φ upsolver

2.4.   During the Term and if separately agreed to between you and Upsolver, Upsolver directly or through third parties, shall provide you those professional services separately agreed to under the Order Form.

**3.    Fees and Expenses**

3.1.   In consideration for the Service provided, Customer shall pay AWS the fees set forth in the Order or on the Marketplace (the "Subscription Fee") (plus any applicable taxes). AWS shall be responsible for paying the Subscription Fees to Upsolver, subject to AWS's agreement with Upsolver. In no event, will Upsolver provide, or be liable for, any refund of the fees Customer pays for access to or use of any other services provided by AWS to Customer. If the Subscription Fee is not paid, it shall be deemed a breach of these Terms entitling Upsolver to suspend or terminate the provision of the Service

3.2.   If Customer deploys Upsolver's products to its own cloud account or data center, Customer will bare all infrastructure and/or provider costs related to its cloud account or data center.

**4.    Customer's Data**

4.1.   Regardless of the Deployment method, Customer Data storage shall be maintained in the Customer's cloud account or in the Customer's data center (as applicable). Servers running Upsolver's Platform shall only store Customer Data in their Random Accesses Memory (RAM) (but not locally on hard drives) and therefore be deleted upon the applicable servers shut down. Upsolver may however store your contact and billing information on its own cloud account. Upsolver is entitled to transfer Provisioning Data in accordance with the provisions of Section 13.2, and between Upsolver's different group entities as required to enable the use of the Platform.

4.2.   Upsolver's use of the Customer Data shall be solely for the purpose of providing its services through the Platform and subject to confidentiality undertaking, as set forth under section 11 below. If Customer will choose to provide Upsolver with access to Customer Data, Upsolver shall implement appropriate technical and organizational measures to ensure an adequate level of security of the Customer Data, and shall ensure access to Customer Data will be limited to Upsolver's personnel on a need to know basis.

4.3.   Customer hereby warrants and represents that (i) it has implemented appropriate technical and organizational measures to ensure a level of security of the infrastructure used to store the Customer Data fed to the Platform; (ii) it has all requisite rights and authority to provide the Customer Data and any other information or data provided to Upsolver in connection with the use of the Platform; (iii) it has obtained all permissions and consents (including consent of data subjects and Authorized Users), as may be necessary under applicable law (including privacy laws), any contract and industry standards, in order to allow Upsolver to lawfully access and process the aforementioned items in the manners and for the purposes contemplated by this Agreement.

**5.    Restrictions**

5.1.   Except as expressly provided herein, you may not use, or have others use, or provide to third parties, access to use the Platform or any part thereof. you may not use the Platform for any activity that constitutes, or encourages conduct that would constitute, a criminal offense, give rise to civil liability or otherwise violate any applicable law. You may not disassemble, de-compile, reverse engineer or create derivative works from the Platform or any part thereof. You may not use the Platform in order to develop, or create, or permit others to develop or create, a similar or competitive product or service. You may not lease, lend, sell, market, license, sublicense, distribute, transfer any of your rights to use the Platform or otherwise grant to any person or entity any right to use the Platform except to the extent expressly permitted hereunder. You may not and may not attempt to breach the security of the Platform or identify any security vulnerabilities thereof, or to interfere with, circumvent, manipulate, impair or disrupt the operation, or the functionality of the Platform.



5.2.    You shall ensure that all your Authorized Users comply with the terms of this Agreement and you shall be liable for any breach thereof by any of your Authorized Users. You will notify us immediately upon becoming aware of any, actual or suspected, unauthorized use of the Platform by your Authorized Users.

5.3.    We reserve the right to immediately block and/or discontinue, without liability, the access to the Platform to any Customer that is in breach of the provisions of this section 5.

## 6.    Term and Termination

6.1.    Except with respect to the trial version which shall be for a limited term, this Agreement commences upon your acceptance and shall continue to be in full force and effect until terminated with immediate effect pursuant to a material breach; and in all cases subject to the other provisions of this Agreement concerning termination. Either Party will have 30 days to cure any material breach before the other party can terminate this agreement

6.2.    Upon termination of this Agreement:

6.2.1.    We may, in our discretion, terminate the Customer's and its Authorized Users' access to the Platform;

6.2.2.    Customer will pay all then-outstanding Fees through the AWS marketplace, unless the Agreement was terminated due to Upsolver's material breach of this Agreement.

6.2.3.    Customer must cease any and all use of the Platform and cause all other Authorized Users of the Customer to cease any and all use of the Platform.

6.2.4.    For the avoidance of doubt, it shall be clarified that Customer shall have no rights to receive any further services through the Platform or otherwise under this Agreement.

6.3.    Sections 3,4,5,6,8,9,10,11,12 and 13 herein will survive any termination of this Agreement.

## 7.    Support and Maintenance

7.1.    Upsolver will respond to questions, problems and inquiries deemed by Upsolver to be of a critical nature, whenever submitted, within one hour of approach.

7.2.    During the Term, we will endeavor to provide you with fixes for Platform malfunctions that you or other customers, have found or reported, considering, among others, our ability to reproduce the malfunction in question, the severity of the malfunction, and the magnitude of its effect.

7.3.    We may modify, adapt, improve, or enhance the Platform, or any of its features, user interface, design or any other aspect related to it, without being obligated to provide you with notice thereof.

7.4.    You agree to cooperate, and work closely with us, to reproduce malfunctions, including conducting diagnostic or troubleshooting activities, as we reasonably request.

## 8.    Intellectual Property

8.1.    As between the Parties, all rights, title and interest, including copyrights, trademarks, trade names, trade secrets and any other intellectual property rights, as well as any goodwill associated therewith, in and to the (i) Platform or any part thereof, including without limitation computer code, graphic design, layout and the user interfaces of the Platform (and also including without limitation in any other information derived from the Platform which is not the Customer Data, such as without limitation, Provisioning Data), and (ii) all derivatives, improvements, updates, enhancements and variations of the foregoing, are and will remain at all times, owned by, or licensed to, Upsolver. Other than the limited use rights expressly granted by this Agreement, this Agreement does not grant, sell, transfer, or assign to you or to any Authorized User, a right, title or interest in or to patents, copyrights, trademarks (whether registered or unregistered), trade names, trade secrets, domain names or any other rights, functions, licenses, or content with respect to, or in connection with, the Platform.

φ upsolver

8.2.   You are not required to provide any feedback or commentary with respect to the Platform or otherwise to Upsolver, but to the extent you do, Upsolver shall be considered to have been granted a free of charge, irrevocable, worldwide, perpetual license to use such feedback and commentary for any purpose whatsoever (including without limitation for the improvement of the Platform or for any other commercial purpose, and including also rights to transfer, and sub-license same), without any requirement to compensate Customer.

8.3.   Notwithstanding the foregoing and for the avoidance of any doubt, you will retain any and all rights, title and interest, including copyrights, trademarks, trade names, trade secrets and any other intellectual property rights you may have, and any goodwill associated therewith, in and to your Customer Data.

## 9.   Disclaimer of Warranty and Limitation of Liability

9.1.   TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY INCLUDING ITS EMPLOYEES, DIRECTORS, OFFICERS, SHAREHOLDERS, ADVISORS, AND ANYONE ACTING ON OUR BEHALF, WILL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE DAMAGES, LOSSES (INCLUDING LOSS OF PROFIT AND LOSS OF DATA), COSTS, EXPENSES AND PAYMENTS, EITHER IN TORT, CONTRACT, OR IN ANY OTHER FORM OR THEORY OF LIABILITY, ARISING FROM, OR IN CONNECTION, WITH THIS AGREEMENT OR THE PLATFORM. THE TOTAL AND AGGREGATE LIABILITY OF EITHER PARTY AND ITS RESPECTIVE EMPLOYEES, DIRECTORS, OFFICERS, SHAREHOLDERS, ADVISORS, AND ANYONE ACTING ON THEIR BEHALF, FOR DIRECT DAMAGES ARISING OUT OF, OR RELATED TO, THIS AGREEMENT OR THE PLATFORM SHALL BE LIMITED TO THE FEES PAYABLE TO UPSOLVER UNDER THIS AGREEMENT IN THE TWELVE (12) MONTHS PRECEDING THE EVENT PURPORTEDLY GIVING RISE TO THE FIRST CLAIM MADE HEREUNDER. NOTWITHSTANDING THE ABOVE, THE LIMITATIONS OF THIS ENTIRE SECTION SHALL NOT APPLY IN THE EVENT OF INTENTIONAL MISCONDUCT, AND/OR WITH RESEPCT TO THE INDEMNIFICATION AND CONFIDENTIALITY OBLIGATIONS HEREUNDER, AND/OR YOUR PAYMENT OBLIGATIONS FOR THE APPLICABLE FEES HEREUNDER, AND/OR BREACH OF SECTIONS 8 (INTELLECTUAL PROPERTY), AND/OR 5 (RESTRICTIONS) BY either party.

9.2.   ALTHOUGH WE USE SKILL AND EFFORTS TO DEVELOP THE PLATFORM, WE DO NOT GUARANTEE, MAKE NO REPRESENTATION, AND PROVIDE NO WARRANTY (I) ABOUT THE ACCURACY OR COMPLETENESS OF THE EXPECTED BUSINESS RESULTS, OUTCOME OR OPERATIONAL BENEFITS FROM UTILIZING THE PLATFORM AND UPSOLVER HAS NO RESPONSIBILITY OR LIABILITY, REGARDING THE CUSTOMER'S RELIANCE UPON, OR USE OF, THE PLATFORM, THE CUSTOMER'S ACTIONS OR OMISSIONS IN CONNECTION WITH THE PLATFORM, OR ANY CONSEQUENCES RESULTING THEREFROM; (II) THAT THE PLATFORM WILL OPERATE IN AN UNINTERRUPTED OR ERROR-FREE MANNER; AND (III) THAT IT WILL ALWAYS BE AVAILABLE, FREE FROM ERRORS, OMISSIONS OR MALFUNCTIONS.

9.3.   THE SERVICES OR FACILITIES OF CERTAIN THIRD PARTIES NOT ACTING ON BEHALF OF UPSOVLER, INCLUDING WITHOUT LIMITATION HOSTING SERVICES OR MAREKT PLACE PLATFORM PROVIDERS, MAY BE REQUIRED TO BE RECEIVED IN ORDER TO RECEIVE USE OF THE PLATFORM. YOU ACKNOWLEDGE THAT (A) SUCH THIRD PARTY PROVIDERS ARE NOT PART OF UPSOLVER'S ORGANIZATION, ARE NOT ACTING ON UPSOLVER'S BEHALF, AND UPSOLVER CANNOT ASSURE THEIR COMPLIANCE WITH THESE TERMS OR ANY OTHER REQUIREMENTS; AND (B) UPSOLVER WILL HAVE NO LIABILITY WHATSOEVER WITH RESEPCT TO THE ACTS OR OMMISIONS OF SUCH THIRD-PARTY PROVIDERS (INCLUDING WITHOUT LIMITATION THEIR FAILURE TO COMPLY WITH ANY TERMS OR REQUIREMETNS FOR USE OF THE SERVICES).

9.4.   EXCEPT AS EXPLICITLY SET FORTH IN THIS AGREEMENT THE PLATFORM IS PROVIDED TO YOU "AS IS" AND "AS AVAILABLE". WE DISCLAIM ALL WARRANTIES AND REPRESENTATIONS, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO THE PLATFORM, INCLUDING ANY WARRANTIES OF MERCHANTABILITY, WORKMANSHIP, FITNESS FOR A PARTICULAR PURPOSE, QUALITY, NON-INFRINGEMENT, TITLE, COMPATIBILITY OR PERFORMANCE.

## 10.   Indemnity.

φ upsolver

10.1.  <u>By Customer</u> - You agree to indemnify and hold harmless Upsolver and its directors, officers, employees, and subcontractors, upon our request and at your own expense, from and against any damages, loss, costs, expenses and payments, including reasonable attorney's fees and legal expenses, arising from any third-party complaint, claim, plea, or demand in connection with your breach of any representation herein.

10.2.  <u>By Upsolver</u> - Upsolver agrees to indemnify and hold you and your directors, officers, employees, and subcontractors harmless, at Upsolver's own expense, from and against any damages, loss, costs, expenses and payments, including reasonable attorney's fees and legal expenses, arising from a third party claim that the Platform, when used within the scope of this Agreement, infringes any intellectual property rights of a third-party. The foregoing indemnity obligation of Upsolver does not apply to claims to the extent arising from, if and as relevant: (i) the combination of the Platform with other products not supplied by or on behalf of Upsolver where such claim would not have arisen from the use of the Platform standing alone, (ii) compliance by Upsolver with your specifications, where such claim would not have arisen from the use of the Platform without compliance with your specifications, (iii) any modification of the Platform not made by or on behalf of Upsolver, where such claim would not have arisen but for such modification, or (iv) where you continue an activity where such claim would not have arisen but for such activity after having received and had a commercially reasonable time to install modifications from Upsolver that would have completely avoided the activity.

10.3.  <u>General</u> – As a condition to the Parties' respective indemnification obligations hereunder, the indemnified Party shall promptly notify the indemnifying Party of any claim subject to indemnification; provided that the indemnified Party's failure to do so shall not affect the indemnifying Party's obligations hereunder, except to the extent that the indemnified Party's failure to promptly notify the indemnifying Party materially delays or prejudices the indemnifying party's ability to defend the claim. The indemnifying Party will have the right to solely defend against any such claim with counsel of its own choosing and to settle such claim as the indemnifying Party deems appropriate, provided the indemnifying Party shall not enter into any settlement without the indemnified Party's prior written consent.

**11.  Confidentiality.**

Both Parties acknowledge that the terms of this Agreement and any other information that a Party hereunder (the "**Recipient**") may be exposed to during the performance of this Agreement, constitute the confidential information ("**Confidential Information**") of the other Party (the "**Disclosing Party**"). The Recipient acknowledges that Confidential Information constitutes valuable proprietary information of the Disclosing Party, and that unauthorized disclosure, transfer, or use of, or unauthorized provision of access to, such information is prohibited and could cause irreparable harm to the Disclosing Party. The Recipient may not disclose the Confidential Information and must hold such information in confidence using the same degree of care that it uses to prevent the unauthorized dissemination or publication of Recipient's own confidential information but in no case less than a reasonable degree of care.

The Recipient will not disclose the Disclosing Party's Confidential Information, except to its respective officers, directors, employees, agents, consultants and subcontractors, on a strict 'need to know' basis, provided they are bound by sufficient confidentiality obligations. The confidentiality and non-use obligations hereunder shall not apply to any information the Recipient can demonstrate: (i) is or becomes generally available to the public, through no breach by the Recipient of this Agreement; (ii) was lawfully in Recipient's possession or known by Recipient prior to receipt from the other Party, as evidenced by written records; (iii) was rightfully disclosed to the Recipient without restriction by a third Party who is not bound by any confidentiality obligations with respect thereto; (iv) was developed by the Recipient without use of or reference to the Disclosing Party's confidential information; or (v) is required to be disclosed by law, provided that, if legally permitted to do so, the Recipient

φ upsolver

will give prompt prior notice of such requirement to the Disclosing Party, in order to allow the Disclosing Party to intervene and protect its interests in such information.

**12.   Governing Law and Venue.**

If the Upsolver entity with which you are engaging is Upsolver Ltd. - This Agreement shall be governed by and construed in accordance with the laws of the State of Israel, without giving effect to its conflict of law principles. Any dispute, controversy or claim which may arise out of or in connection with this Agreement or our services hereunder, shall be submitted to the sole and exclusive jurisdiction of the competent courts in the Tel Aviv district in Israel.

If the Upsolver entity with which you are engaging is Upsolver Inc. - This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to its conflict of law principles. Any dispute, controversy or claim which may arise out of or in connection with this Agreement or our services hereunder, shall be submitted to the sole and exclusive jurisdiction of the competent New York State Courts located in New York County and the U.S. District Court for the Southern District of New York.

12.1.   Subject to the aforesaid, you and Upsolver, each hereby expressly consent to the exclusive personal jurisdiction and venue of such courts, and waive any objections related thereto including objections on the grounds of improper venue, lack of personal jurisdiction or *forum non conveniens.*

12.2.   Notwithstanding the foregoing (i) either Party may lodge a claim against the other Party pursuant to the indemnity clause above, in any court adjudicating a third-party claim against us; and (ii) either Party may also seek interim or emergency relief in the competent courts located in the jurisdiction in which the other Party in incorporated.

**13.   General Terms.**

13.1.   **Force Majeure.**  Neither Party will be responsible for any failure or delay in its performance under this Agreement (except for any payment obligations) due to causes beyond its reasonable control, including, but not limited to, internet or cloud resources failure, infrastructure, hardware and software failure, network or computer equipment failures, telecommunication equipment failure, electrical power failures, strikes, labor disputes, riots, insurrections, civil disturbances, shortages of labor or materials, fires, floods, storms, explosions, acts of God, war, governmental actions, orders of domestic or foreign courts or tribunals or loss of or fluctuations in heat, light or air conditioning.

13.2.   **Assignment.** Each Party may assign this Agreement in its entirety, including all rights, duties, liabilities, performances, gathered Customer's Data and obligations herein upon a merger, acquisition, change of control or the sale of all or substantially all of its equity or assets. By virtue of such assignment, the assignee assumes in the assigning Party's stead, including all rights, duties, liabilities, performances and obligations hereunder, and the assigning Party is released therefrom.

13.3.   **Relationship of the parties**. The relationship between the Parties hereto is strictly that of independent contractors, and neither Party is an agent, partner, joint venture or employee of the other.

13.4.   **Reference**. Upsolver may use Customer's name, logo and other marks on its website and in its marketing materials in order to reference Customer as a customer of Upsolver. With the Customer's consent, Upsolver may further publish high level details of Customer's implementation of the Platform and refer potential customers and investors as a reference customer, provided that no such connection to Customer will be made without its prior consent.

13.5.   **Complete Terms and Severability**. This Agreement constitute the entire and complete agreement between you and us concerning the subject matter herein. This Agreement supersedes all prior oral or written statements, understandings, negotiations and representations with respect to the subject matter herein. If any provision of this Agreement is held invalid or unenforceable, that provision shall be construed in a manner consistent with

φ upsolver

the applicable law to reflect, as nearly as possible, the original intentions of the Parties, and the remaining provisions will remain in full force and effect. This Agreement may be modified or amended only in writing, signed by the duly authorized representatives of both Parties. In the event of a conflict between these terms of service and an order form executed by both Parties, these terms of service shall prevail, unless such Order Form explicitly specifies the contemplated issue in these terms of services is to be modified by such Order Form.

13.6.  **No waiver**. Neither Party will, by mere lapse of time, without giving express notice thereof, be deemed to have waived any breach, by the other Party, of any terms or provisions of this Agreement. The waiver, by either Party, of any such breach, will not be construed as a waiver of subsequent breaches or as a continuing waiver of such breach.

* * * * *

INDEX NO. 651128/2025
RECEIVED NYSCEF: 02/27/2025

# Exhibit B

Case 1:25-cv-01859-VM    Document 1-2    Filed 03/05/25    Page 45 of 67.  INDEX NO. 651128/2025

RECEIVED NYSCEF: 02/27/2025



## Fwd: FW: Payments due to Upsolver

**Arnon Brouner** <arnon.brouner@peer39.com>                    Tue, Feb 18, 2025 at 3:02 AM
To: Joel Horovitz <Joel.Horovitz@qlik.com>
Cc: "boaz.goldstein@peer39.com" <boaz.goldstein@peer39.com>

Hey Joel,
I was able to get in touch with accounting. We summarized some of the pain points we had over the last year.
The issues below did impact our production in 3 ways:
Cost,resource allocation and stability, each in its own way.

**1. S3 utilization bumps:**

- S3 & EC2 cost increase starting Q4-2023: S3 cost major jump is due to a data-retention bug in Upsolver, causing uncontrolled data growth. fixed mid-December.We evaluate the extra cost due to Upsolver bug in ~15K.
- During Q4 of 2024 we again saw a big increase in S3 datalake costs due to sqlake repeated data accumulation bugs, and that is happening after we dropped over 100TB of seed data from the previous version (classic). The problem is still open and Adar and team are working on mitigation

**2. Transition to SQLake:**

- The lack of backward support between Iceberg and classic made both teams realised that migrating from upsolver classic to sqlake will require a complete pipeline rewrite. It took us over a quarter (Q3-24) together with Upsolver support to learn and redevelop the Analytics pipeline to sqlake. Due to the long migration time, - we never started TAO nor Usage projects and all resources were diverted to pipeline migration.

The current 2024 invoice you sent earlier does NOT reflect any of these major issues we had. We feel that the above issues need attention and significant cost considerations.

Thx
-A

On Thu, Feb 6, 2025 at 7:47 PM Joel Horovitz <Joel.Horovitz@qlik.com> wrote:
Thanks Arnon for the update.

Joel.

Sent from Outlook for Android

**From:** Arnon Brouner <arnon.brouner@peer39.com>
**Sent:** Thursday, February 6, 2025 7:45:27 PM
**To:** Joel Horovitz <Joel.Horovitz@qlik.com>
**Cc:** boaz.goldstein@peer39.com <boaz.goldstein@peer39.com>
**Subject:** Re: FW: Payments due to Upsolver

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Joel,
I was able to get in touch with the US team and we are going to have a meeting about this next week.
I'll keep you posted next week.
Thank you
-A

Case 1:25-cv-01859-VM    Document 1-2    Filed 03/05/25    Page 46 of 67

2/26/25, 3:15 PM                    Peer39 Mail - Fwd: FW: Payments due to Upsolver

On Mon, Feb 3, 2025 at 10:45 AM Joel Horovitz <Joel.Horovitz@qlik.com> wrote:

Hi Arnon,

How's it going?

Do you have any updates regarding this matter. I need to settle this as soon as possible.

Thanks for understanding.

Joel.

---

Joel Horovitz

Account Executive

Qlik | Upsolver

Joel.horovitz@qlik.com

+972549799460

---

**From:** Arnon Brouner <arnon.brouner@peer39.com>
**Date:** Thursday, 16 January 2025 at 9:36
**To:** joel Horovitz <joel@upsolver.com>
**Subject:** Re: Payments due to Upsolver

Hi Joel,

Thank you for this earlier email.

I'm going to review it with Boaz and get back with you.

Thanks again

-A

Hi Arnon and Boaz,

FILED: NEW YORK COUNTY CLERK 02/27/2025 01:04 PM    INDEX NO. 651128/2025
NYSCEF DOC. NO. 8                                               RECEIVED NYSCEF: 02/27/2025
2/26/25, 3:15 PM                    Peer39 Mail - Fwd: FW: Payments due to Upsolver

It's been a while. Sorry for losing touch.

As 2024 came to an end our finance department went through all the payments made by customers during 2024 and it turns out that during the year we only received 3 payments from Peer39 as follows:

- March - $15,448 (payment for December 2023 so not part of the current contract)
- April - $39,365 (for Jan. 2024)
- May - $27,695.52 (for Feb. 2024)
- TOTAL for 2024 - $67,060

No additional payments (as far as we can see) were made at any time during 2024.

The total data volume ingested during 2024 was: 7,043,670GB (6,879 TB, Please see attached report)

The price per GB is: $0.045

Total payment due: $316,965

Actual payment made: $67,060

Therefore, the payment due is: $249,905.

Please advise if I need to send this to anyone else in Peer39, and please let me know when you think the payment could be transferred.

Thanks,

Joel.



**Joel Horovitz | Director of Global Sales**

in



**ICEBERG**

**Mobile:** +44 20 8144 5087 | +972 54 9799460

**Email:** joel@upsolver.com

upsolver.com

2/26/25, 3:15 PM                                    Peer39 Mail - Fwd: FW: Payments due to Upsolver

The information transmitted by Qlik is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer. Qlik's Privacy & Cookie Notice describes how we handle personal information

The information transmitted by Qlik is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer. Qlik's Privacy & Cookie Notice describes how we handle personal information

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

P39 TECH LLC,

                Plaintiff,

     -against-

UPSOLVER, INC., QLIKTECH, INC.,

               Defendants.

Index No. _____

## MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

**DUNNINGTON, BARTHOLOW & MILLER LLP**
Attorneys for Plaintiff

Luke McGrath, Esq.
230 Park Avenue, 21st Floor
New York 10169
Telephone: +1.212-682 8811
LMcgrath@Dunnington.com

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................................ 1

II.   STATEMENT OF FACTS ............................................................................................... 1

III.  ARGUMENTS ................................................................................................................ 6

    A.  A RESTRAINT IS NEEDED TO STOP UPSOLVER FROM SHUTTING DOWN
        PEER39'S ACCESS TO UPSOLVER'S SERVICES ..................................................... 6

        1.   Immediate Irreparable Injury ............................................................................ 6

        2.   Likelihood of Success ........................................................................................ 8

        3.   Balance of the Equities ...................................................................................... 9

        4.   Public Interest .................................................................................................. 10

IV.   CONCLUSION ............................................................................................................. 10

ii

# TABLE OF AUTHORITIES

Page(s)

Cases

*DiFabio v. Omnipoint Communications, Inc.*,
  66 AD3d 635 (2d Dept. 2009)..................................................................................... 6
*Jacob H. Rottkamp & Son, Inc. v. Wulforst Farms, LLC*,
  17 Misc 3d 382 (Sup Ct 2007) ................................................................................. 7
*N. Fork Distrib., Inc. v. New York State Cannabis Control Bd.*,
  81 Misc 3d 952 (Sup Ct 2023) ................................................................................. 9
*Nobu Next Door, LLC v. Fine Arts Hous., Inc.*,
  4 N.Y.3d 839 (2005) ................................................................................................. 6
*Seitzman v. Hudson Riv. Assoc.*,
  126 AD2d 211 (1st Dept. 1987) ............................................................................... 10
*Spinal Dimensions, Inc. v. Chepenuk*,
  16 Misc 3d 1121(A) (NY Sup. 2007)...................................................................... 10
*Tucker v. Toia*,
  388 N.Y.S.2d 475 (N.Y. App. Div. 1976)................................................................ 8
*Uber Tech., Inc. v. New York City Dept. of Consumer and Worker Protection*,
  80 Misc 3d 1221(A) (Sup Ct. 2023)......................................................................... 9
*Ying Fung Moy v. Hohi Umeki*,
  781 N.Y.S.2d 684 (N.Y. App. Div. 2004)................................................................ 8

Rules

CPLR 6301................................................................................................................. 1, 6

Regulations

22 NYCRR § 202.8-b ................................................................................................. 12

iii

Case 1:25-cv-01859-VM Document 1-2 Filed 03/05/25 Page 52 of 67

Pursuant to CPLR 6301, Movants P39 Tech LLC ("Peer39" or "Plaintiff"), bring this proceeding seeking a restraint against Upsolver, Inc. ("Upsolver") and QlikTech, Inc. ("QlikTech," together "Defendants") to prevent Upsolver from immediately shutting down Peer39's access to Upsolver's services. Plaintiffs seeks relief as follows:

## I.  PRELIMINARY STATEMENT

This is a case about a vendor who is threatening to destroy its customer's business with the flick of a switch – the Court should not allow that to happen. Plaintiff Peer39 engaged with Upsolver to access Upsolver's platform to conduct Peer39's business. After years of working together, Upsolver emailed and complained that Peer39 had an outstanding amount due. This was because Upsolver failed to invoice and properly account for Peer39's usage. Also, Upsolver had failed to fix serious bugs in the system that were impacting performance. Instead of working out a resolution, Upsolver unilaterally decided to "flick the switch" and shut down Peer39's access – which is about to happen Friday, February 28, 2025.

The Court should issue a temporary restraint and order Upsolver to appear and show cause why a preliminary injunction should not be issued – in order to protect the status quo and save Peer39 from disaster (and save Upsolver from itself).

## II.  STATEMENT OF FACTS

1.      Peer39 is a limited liability company registered to do business in New York. Alex White is the COO of Peer39 and Arnon Brouner is a representative of Peer39. *See* Affidavit of Alex White dated February 27, 2025 ("White Aff."), para 2.

2.      Upsolver is a foreign business corporation registered to do business in New York. According to Upsolver, Joel Horovitz is the Director of Global Sales of Upsolver and Ori Rafael is a representative of Upsolver. *See* White Aff., para 3.

3. Peer39 and Upsolver entered into an agreement for Upsolver to provide services to Peer39 in and around February 2020 (the "EULA"). *See* White Aff., para 4.

4. The relationship began and the first payment was billed and paid in April 2020. Implementation was complete in May 2020 and the parties moved forward under the EULA up to the present. *See* White Aff., para 5.

5. Under this agreement, Upsolver provided Peer39 with access to Upsolver's "Data Lake" platform in order that Peer39 could conduct its business. *See* White Aff., para 6.

6. Peer39's business is categorizing websites according to the content of their articles. Customers pay per website categorized in order that the customers can place their advertisements next to relevant content and avoid association with undesirable or unsafe content. *See* White Aff., para 7.

7. Peer39 utilizes the Upsolver platform to store data and generate analytics. *See* White Aff., para 8.

8. Peer39 uses Upsolver services on a month-to-month basis. This is called the "on demand price" in the EULA. *See* White Aff., para 9.

9. Under the EULA, Upsolver should have sent invoices to Peer39 at the end of each calendar month according to actual consumption. *See* White Aff., para 10.

10. For more than four years, Peer39 has been a customer of Upsolver, abiding by the commitment agreement terms per the EULA. *See* White Aff., para 11.

11. On or around January 16, 2025, Horovitz sent an email to Brouner alleging, incorrectly, that Peer39 had an outstanding $249,905 amount due to Upsolver for 2024. *See* White Aff., para 12.

12. Leading up to this email, Upsolver did not send any invoices for the period of February 2024 to December 2024. *See* White Aff., para 13.

2

13.     Further, before this email, Upsolver had not invoiced or notified Peer39 of any alleged amounts due.  In fact, notwithstanding the requirement under the EULA, Upsolver had not, at the end of each calendar month, notified Peer39 of any usage or amounts due according to actual consumption. *See* White Aff., para 14.

14.     This is required by the parties' EULA, as follows:

*"On-Demand Price" - no commitment, pay-as-you go model. Upsolver will bill Customer in the end of a calendar month according to its actual consumption.*

White Aff., Ex. A at Section 1.13.

15.     The first time Peer39 received any notification from Upsolver was around January 16, 2025. *See* White Aff., para 16.

16.     At that time, Upsolver did not provide any corroboration or authentication of the amount it claimed was due and did not provide any underlying calculation. *See* White Aff., para 17.

17.     Peer39 immediately objected to the email and the claimed amount due, sparking a flurry of telephone calls and emails. *See* White Aff., para 18.

18.     Then, on February 18, 2025, Peer39 further notified Upsolver that their calculation was wrong and Upsolver's system had known defects that caused consumption to be incorrect. *See* White Aff., Ex. B. Peer39 asked Upsolver to fix the proposed usage based on the known errors that Upsolver was currently then attempting to rectify.  Upsolver's unilateral accounting fails to reflect major issues with the service that impacted cost, resource allocation and stability. *See* White Aff., para 19.

19.     On or about February 25, 2025, representative of Upsolver Ori Rafael informed Peer39 that Upsolver would terminate Peer39's access to Upsolver services within three days if Peer39 did not waive its objections and make payment according to Upsolver's inaccurate demand.  Specifically, Upsolver threatened to shut off Peer39 in three days absent surrender.  The three-day

Case 1:25-cv-01858-VM   Document 1-2   Filed 03/05/25   Page 55 of 67

period ends on February 28, 2025. Upsolver refused to discuss alternatives or dispute resolution and instead issued the three-day ultimatum. *See* White Aff., para 20.

20.     The EULA provides only a termination for a material breach. *See* White Aff., para 21.

21.     Peer39's business model relies on categorizing websites based on the content of their articles, a service for which clients pay per website categorized. Peer39's ability to provide this service is contingent upon access to Upsolver, which constitutes critical infrastructure. If Upsolver shuts off access, Peer39's system will cease functioning, preventing the categorization of websites and rendering Peer39 unable to fulfill its obligations to clients. This disruption threatens not only Peer39's operational capacity but also its credibility in the marketplace, as it will be seen as unable to deliver on its commitments. *See* White Aff., para 22.

22.     Without the availability of Peer39's categorization service, through dependence on Upsolver's infrastructure, Peer39's customer's brands will be linked with inappropriate content, such as pornography or illegal materials. If a major brand's advertising is linked to such content, the reputational harm to both Peer39 and the advertiser is immeasurable, leading to further long-term and expanding losses. *See* White Aff., para 23.

23.     The interruption of Peer39's ability to categorize websites will result in the immediate loss of clients and the company's inability to meet contractual obligations. Peer39 will lose clients and be unable to function as a business since it will have no product to satisfy its contracts. This failure will erode Peer39's reputation in the marketplace, as customers will perceive the company as unreliable. The loss of clients will compound this damage, leading to a substantial decrease in goodwill, a critical asset that is impossible to recover through ordinary remedies. Peer39's long-standing relationships with clients will be severely damaged, leading to cascading reputational harm. *See* White Aff., para 24.

4

24.    Allowing Upsolver to terminate Peer39's access to its services changes the status quo and is a draconian result considering Upsolver did not invoice Peer39 for a year and now their demand for payment is nothing more than a billing dispute. *See* White Aff., para 25.

25.    The financial losses from the inability to provide services are unquantifiable, as money damages cannot capture the loss of credibility, goodwill, and reputational damage to both Peer39 and its customers. The disruption will render Peer39's product useless, devaluing the business and undermining client trust. Additionally, clients rely on Peer39's categorizations to avoid associating their brands with inappropriate content, such as pornography or illegal materials. If a major brand's advertising is linked to such content, the reputational harm to both Peer39 and the advertiser is immeasurable, leading to further long-term and expanding losses. *See* White Aff., para 26.

26.    Money damages cannot possibly make Peer39 whole should Upsolver shut out access because its product will cease to function and its business will no longer have value to any of its customers. Further, Upsolver was acquired by Qlik on January 15, 2025, and Qlik is in the process of winding down Upsolver. Even if Plaintiff got a money judgment against Upsolver, it would have no value. As such, Peer39 does not have a potential for a real monetary remedy. *See* White Aff., para 27.

27.    Additionally, this harm cannot be quantified due to the loss of existing customers but also losses beyond reputational damages because those customers in turn will be damaged in their own business in an ever-expanding impact. *See* White Aff., para 28.

28.    At the time of the filing of this application, Upsolver – after receiving notice of this filing – has not contacted Peer39 to withdraw the threat of turning off Peer39's access to its services on February 28, 2025. *See* White Aff., para 29.

5

29.     The threatened shutdown will cut Peer39 off from its own digital assets which are so intertwined with Upsolver's pipeline, as a longstanding customer of Upsolver, that Upsolver would in essence be taking Peer39's property. *See* White Aff., para 31.

30.     As Plaintiff, Peer39 seeks an injunction to stop Defendants from terminating Peer39's access. *See* White Aff., para 30.

## III.     ARGUMENTS

### A. A RESTRAINT IS NEEDED TO STOP UPSOLVER FROM SHUTTING DOWN PEER39'S ACCESS TO UPSOLVER'S SERVICES

Plaintiffs satisfy the elements for a restraint here considering Upsolver's recently threatened acts. "A temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had." CPLR § 6301. It is well-settled that a party seeking a preliminary injunction "must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor." *Nobu Next Door, LLC v. Fine Arts Hous., Inc.*, 4 N.Y.3d 839, 840 (2005).

#### 1. Immediate Irreparable Injury

Plaintiff has shown it will suffer immediate irreparable injury absent restraint. "'Irreparable injury,' for purposes of equity, has been held to mean any injury for which money damages are insufficient." *DiFabio v. Omnipoint Communications, Inc.*, 66 AD3d 635, 636-37 (2d Dept. 2009). Here, Peer39's business is categorizing websites according to the content of their articles, and Peer39's customers pay per website categorized. This is a benefit to its customers because it protects them from being inadvertently or unfairly connected to other web content that could have a negative impact on the customers' brand and audience. Peer39 relies upon Upsolver as critical infrastructure and shutting off access will cause Peer39's system to stop functioning. If Upsolver shuts down

6

Peer39's access, the websites that Peer39 needs to attend to will not be identifiable or accessible to Peer39. As a result, Peer39 will lose significant opportunities to service their trusted clients who rely on them. Peer39's reputation in its niche industry will irreparably be damaged, and Peer39 will lose clients due to an inability to function with defunct products through which to offer services.

In summary:

1. Upsolver's shutdown is threatened to be implemented by Friday, February 28, 2025. *See* White Aff., para 20.

2. Such a shutdown will immediately and irreparably harm Peer39 resulting in Peer39 losing the technological infrastructure it relies upon; losing the capability of doing its core function; losing the ability of operating its product and servicing its clients; and going out of business. *See* White Aff., paras 22-25.

3. The shutdown would further harm Peer39's customer base. *See* White Aff., paras 7, 26.

4. The threatened shutdown would result in Peer39 losing the good will, reputation, and credibility it has established during its 19-year lifespan. *See* White Aff., para 2 and 26.

5. The threatened shutdown will cut Peer39 off from its own digital assets which are so intertwined with Upsolver's pipeline, as a longstanding customer of Upsolver, that Upsolver would in essence be taking Peer39's property. *See* White Aff. 31.

The above listed harms are not subject to cure in the form of a money judgment. For example, the digital assets are property that has more than just a monetary value. The loss of goodwill and reputation is devasting here. Such harms are beyond satisfaction pursuant to a money judgment. "Evidence of potential damage to a business reputation is a sufficient basis to establish irreparable injury justifying the grant of preliminary injunctive relief." *See Jacob H. Rottkamp & Son, Inc. v. Wulforst Farms, LLC*, 17 Misc 3d 382, 388 (Sup Ct 2007) ("Damage to business reputation and good will can be difficult or impossible to quantify and demonstrates irreparable harm,

7

as opposed to injury that can be compensated with damages"). Accordingly, Peer39 has demonstrated immediate, irreparable harm.

### 2. Likelihood of Success

The facts are sufficient here to demonstrate a likelihood of success. To demonstrate a likelihood of success, "[i]t is enough if the moving party makes prima facie showing of his right to relief; the actual proving of his case should be left to the full hearing on the merits[.]" *Tucker v. Toia*, 388 N.Y.S.2d 475, 478 (N.Y. App. Div. 1976). "[C]onclusive proof is not required" to show that there is a likelihood of success on the merits. *Ying Fung Moy v. Hohi Umeki*, 781 N.Y.S.2d 684, 686 (N.Y. App. Div. 2004). And "the mere fact that there indeed may be questions of fact for trial does not preclude a court from exercising its discretion in granting an injunction," because the court may determine the likelihood of success from the evidence presented. *Id.* (citations and internal quotation marks omitted).

Here, Upsolver's threatened shutdown is not in accordance with the EULA. Section 6.1 of the EULA states as follows: "[T]his Agreement commences upon your acceptance and shall continue to be in full force and effect until terminated by Upsolver with immediate effect pursuant to a material breach by you; and in all cases subject to the other provisions of this Agreement concerning termination." White Aff., Ex. A. As set forth in the Affidavit of Alex White and the Complaint, Upsolver failed to invoice or even notify Peer39 of any amounts due for nearly 12 months. Then, out of the blue, Upsolver sought payment for an inflated amount. White presents compelling evidence that the amount is inflated because it does not reflect the major issues Peer39 encountered with Upsolver's service in 2024. Upsolver has not even attempted to justify its calculations and did not follow the process laid out under the EULA for submitting amount dues. *See* White Aff., para 13. Thus, Plaintiff is more than likely to demonstrate that the demanded amount is inflated and further that Upsolver negligently or knowingly sought payment for an amount that it knew or should

have known was overstated.

### 3. Balance of the Equities

The balance of the equities favors Peer39. Where the movant "satisfies both the merits and irreparable injury prongs, the balance of the equities always tips in the movant's favor absent some greater hardship that the nonmovant would suffer should the injunction issue." *N. Fork Distrib., Inc. v. New York State Cannabis Control Bd.*, 81 Misc 3d 952, 964 (Sup Ct 2023). Here, Upsolver cannot claim it suffers any hardship. Upsolver failed to notify Peer39 of the alleged amount due until on or around January 16, 2025. Pursuant to the EULA, Upsolver was required to bill Peer39 at the end of each calendar month according to its actual consumption. White Aff., Ex. A, Section 1.13. By failing to invoice, Upsolver has failed to comply with the terms of the agreement. Upsolver cannot now cry foul – months too late. Further, there is no hardship for time that passes during the pendency of a litigation – that is not "undue hardship" that tips the scale. The balance of equities favor Peer39 for seeking to maintain the status quo. *Uber Tech., Inc. v. New York City Dept. of Consumer and Worker Protection*, 80 Misc 3d 1221(A) (Sup Ct. 2023), lv to appeal dismissed, 41 NY3d 935 (2024) ("Accordingly, the balance of equities favors [Petitioner], who seeks to maintain the status quo pending the ultimate determination of this controversy"). Here, because Upsolver simply must demonstrate its entitlement to payment – it suffers no hardship.

In contrast, Peer39 is in danger of being shut out of a valuable – mission critical resource – Upsolver services. Peer39's product offering is under threat of existential harm. *See* White Aff., paras 23-26, 31. All Peer39 seeks is a forum in which it can have a fair opportunity to review corroborated and authenticated payment amounts which Upsolver merely alleges are due. An injunction is necessary to preserve the status quo while the parties resolve what amounts to a billing dispute. Peer39 is a longstanding customer of Upsolver, and Peer39 has made timely and full payments throughout its dealings in business with Upsolver up until the time Upsolver inexplicably

9

failed to invoice and developed bugs in its system that resulted in overcharging its customer. White Aff. 19-20. Upsolver has admitted and pointed out Peer39's good faith and good business dealings. White Aff. Ex. B. Specifically, in March, April, and May of 2024, Peer39 sent three payments to Upsolver, for a total amount of $67,060. White Aff., Ex. B. Despite Peer39's upstanding conduct, Upsolver's treatment of Peer39 and threat of putting Peer39 out of business by shutting down access almost immediately, is reprehensible and unjust.

### 4. Public Interest

Restraint protecting a customer from the threat of immediate shut down is in the public interest. "When the court balances the equities in deciding upon injunctive relief, it must consider the 'enormous public interests involved.'" *Seitzman v. Hudson Riv. Assoc.*, 126 AD2d 211, 214 (1st Dept. 1987). Upsolver's actions are not in accordance with its contract and not conducive to normal market activity. Peer39's many customers would be significantly harmed by this threatened shut down. Indeed, vendors like Upsolver should not hold customers hostage due to their own failures. "Such a loss of customer good will can constitute irreparable harm for preliminary injunction purposes." *Spinal Dimensions, Inc. v. Chepenuk*, 16 Misc 3d 1121(A) (NY Sup. 2007). A restraint against Upsolver is required to ensure that innocent businesses are not disrupted and harmed by a vendor like Upsolver suddenly deciding it can shut down services because it (not the customer) failed to follow its own contract.

## IV.   CONCLUSION

Pursuant to CPLR Article 63, the controlling case law cited herein, and the attached Affidavits, the Court should GRANT a Temporary Restraining Order and provide the relief as set forth in the Proposed Order to Show Cause With Temporary Restraining Order filed herewith and attached to the Affirmation of Luke McGrath as **Exhibit B**.

Under the circumstances on this matter, no security to secure the injunction issued against

Case 1:25-cv-01859-VM    Document 1-3    Filed 03/05/25    Page 62 of 67.    651128/2025

RECEIVED NYSCEF: 02/27/2025

Upsolver should be required. However, if the Court decides that it should nonetheless be required,

then it should be set at a nominal amount of no more than $500.00.

Dated: New York, New York
February 27, 2025

DUNNINGTON, BARTHOLOW & MILLER LLP
Attorneys for Plaintiff

By: /s/ Luke McGrath
Luke McGrath, Esq.
230 Park Avenue, 21st Floor
New York 10169
Telephone: +1.212-682 8811
LMcgrath@Dunnington.com

11

### WORD COUNT CERTIFICATION

I, Luke McGrath, an attorney duly admitted to practice law before the Courts of the State of New York, hereby certify that this Memorandum complies with the word count limit set forth in 22 NYCRR § 202.8-b, because it contains 3,169 words, excluding the caption and signature block. In preparing this certification, I have relied on the word count of Microsoft Word, the word processing system used to prepare this affirmation.

Dated: New York, New York
     February 27, 2025
                             /s/ Luke McGrath
                             Luke McGrath

FILED: NEW YORK COUNTY CLERK 02/27/2025 07:04 PM   INDEX NO. 651128/2025
NYSCEF DOC. NO. 10                                    RECEIVED NYSCEF: 02/27/2025

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 12/16/2024)

### Supreme COURT, COUNTY OF New York

Index No: _____   Date Index Issued: _____

| | For Court Use Only: |
|---|---|
| | IAS Entry Date |
| | Judge Assigned |
| | RJI Filed Date |

**CAPTION**   Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

P39 Tech LLC

Plaintiff(s)/Petitioner(s)

-against-

Upsolver, Inc., QlikTech, Inc.,

Defendant(s)/Respondent(s)

## NATURE OF ACTION OR PROCEEDING:   Check only one box and specify where indicated.

**COMMERCIAL**
- [ ] Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- [x] Contract
- [ ] Insurance (where insurance company is a party, except arbitration)
- [ ] UCC (includes sales and negotiable instruments)
- [ ] Other Commercial (specify): _____

**NOTE:** For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the **COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).**

**TORTS**
- [ ] Asbestos
- [ ] Environmental (specify): _____
- [ ] Medical, Dental or Podiatric Malpractice
- [ ] Motor Vehicle
- [ ] Products Liability (specify): _____
- [ ] Other Negligence (specify): _____
- [ ] Other Professional Malpractice (specify): _____
- [ ] Other Tort (specify): _____

**SPECIAL PROCEEDINGS**
- [ ] Child-Parent Security Act (specify): [ ] Assisted Reproduction [ ] Surrogacy Agreement
- [ ] CPLR Article 75 - Arbitration   [see **NOTE** in **COMMERCIAL** section]
- [ ] CPLR Article 78 - Proceeding against a Body or Officer
- [ ] Election Law
- [ ] Extreme Risk Protection Order
- [ ] MHL Article 9.60 - Kendra's Law
- [ ] MHL Article 10 - Sex Offender Confinement (specify):   [ ] Initial   [ ] Review
- [ ] MHL Article 81 (Guardianship)
- [ ] Other Mental Hygiene (specify): _____
- [ ] Other Special Proceeding (specify): _____

**MATRIMONIAL**
- [ ] Contested
  **NOTE:** If there are children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum (UCS-840M).**
  For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).

**REAL PROPERTY**   Specify how many properties the application includes: _____
- [ ] Condemnation
- [ ] Mortgage Foreclosure (specify): [ ] Residential     [ ] Commercial
  Property Address: _____
  **NOTE:** For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the **FORECLOSURE RJI ADDENDUM (UCS-840F).**
- [ ] Partition
  **NOTE:** Complete and attach the **PARTITION RJI ADDENDUM (UCS-840P).**
- [ ] Tax Certiorari (specify): Section: _____ Block: _____ Lot: _____
- [ ] Tax Foreclosure
- [ ] Other Real Property (specify): _____

**OTHER MATTERS**
- [ ] Certificate of Incorporation/Dissolution   [see **NOTE** in **COMMERCIAL** section]
- [ ] Emergency Medical Treatment
- [ ] Habeas Corpus
- [ ] Local Court Appeal
- [ ] Mechanic's Lien
- [ ] Name Change/Sex Designation Change
- [ ] Pistol Permit Revocation Hearing
- [ ] Sale or Finance of Religious/Not-for-Profit Property
- [ ] Other (specify): _____

## STATUS OF ACTION OR PROCEEDING   Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | [ ] | [x] | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | [ ] | [x] | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | [ ] | [x] | If yes, judgment date: _____ |

## NATURE OF JUDICIAL INTERVENTION   Check one box only and enter additional information where indicated.

- [ ] Infant's Compromise
- [ ] Extreme Risk Protection Order Application
- [ ] Note of Issue/Certificate of Readiness
- [ ] Notice of Medical, Dental or Podiatric Malpractice   Date Issue Joined: _____
- [ ] Notice of Motion   Relief Requested: _____   Return Date: _____
- [ ] Notice of Petition   Relief Requested: _____   Return Date: _____
- [x] Order to Show Cause   Relief Requested: PREL INJUNCTION/TEMP REST ORDR   Return Date: _____
- [ ] Other Ex Parte Application   Relief Requested: _____
- [ ] Partition Settlement Conference
- [ ] Request for Preliminary Conference
- [ ] Residential Mortgage Foreclosure Settlement Conference
- [ ] Waiver of Court Costs, Fees and Expenses
- [ ] Writ of Habeas Corpus
- [ ] Other (specify): _____

Case 1:25-cv-01858-VM   Document 1-2   Filed 03/05/25   Page 65 of 67

## RELATED CASES
List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank.
If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## PARTIES
For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: P39 Tech LLC<br><br>Role(s): Plaintiff/Petitioner | LUKE MCGRATH, Dunnington, Bartholow & Miller, LLP, 250 Park Avenue Suite 1103, New York, NY 10177, 212-682-8811, lmcgrath@dunnington.com | ☐ YES  ☒ NO | |
| ☒ | Name: Upsolver, Inc.<br><br>Role(s): Defendant/Respondent | 691 S. Milpitas Blvd, Suite 212, Milpitas, CA 95035, Joel.Horovitz@qlik.com | ☐ YES  ☒ NO | |
| ☒ | Name: QlikTech, Inc.<br><br>Role(s): Defendant/Respondent | 80 State Street, New York, NY 12207 | ☐ YES  ☒ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:  02/27/2025                                    LUKE A MCGRATH
_____                              _____
                                                        Signature

            2856011                                  LUKE A MCGRATH
_____                      _____
Attorney Registration Number                        Print Name

INDEX NO. 651128/2025

RECEIVED NYSCEF: 02/27/2025



**New York State Unified Court System**

**Request for Judicial Intervention Commercial Division Addendum**

nycourts.gov

**UCS-840C** (01/2024)
Page **1** of **2**
nycourthelp.gov

**Supreme Court**
**County of New York**

**Plaintiff/Petitioner** (persons/entities that started the case):

P39 Tech LLC

**Defendant/Respondent** (persons/entities the case is against):

Upsolver, Inc., QlikTech, Inc.

**Index #:**

_____

_____

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

☒ Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g., unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g., sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; technology transactions and/or commercial disputes involving or arising out of technology; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

☐ Transactions governed by the Uniform Commercial Code, excluding those concerning individual cooperative or condominium units

☐ Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

☐ Shareholder derivative actions (without consideration of the monetary threshold)

☐ Commercial class actions (without consideration of the monetary threshold)

☐ Business transactions involving or arising out of dealings with commercial banks and other financial institutions

☐ Internal affairs of business organizations

☐ Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

☐ Environmental insurance coverage

☐ Commercial insurance coverage (e.g., directors and officers, errors and omissions, and business interruption coverage)

☐ Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures (without consideration of the monetary threshold)

☐ Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues (where the applicable agreement provides for the arbitration to be heard outside the United States, the monetary threshold set forth in 22 NYCRR 202.70(a) shall not apply)



**ADA Accommodations**
ada@nycourts.gov

**Spoken or Sign Language Interpreters**
interpreter@nycourts.gov

**COURT** ◄Help► 1-800-COURT-NY
(268-7869)

INDEX NO. 651128/2025
RECEIVED NYSCEF: 02/27/2025

**UCS-840C** (01/2024)          Page **2** of **2**     **Index #:**

Plaintiff/Petitioner's claim for compensatory damages, exluding punitive damages, interest, costs and counsel fees claimed:  $500000.00

Plaintiff/Petitioner's claim for equitable or declaratory relief [brief description]:
 TRO and PI restraining Upsolver from terminating, suspending or otherwise modifying P39 Tech LLCs access to Upsolvers services

Defendant/Respondent's counterclaims, including claims for monetary relief [brief description]:

I request that this case is assigned to the Commercial Division. I certify that the case meets the Commercial Division's jurisdictional requirements as set forth in 22 NYCRR 202.70(a), (b) and (c).

Dated:  02/27/2025                              LUKE A MCGRATH
                                                  Signature

                                                 LUKE A MCGRATH
                                                  Print Name